UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Josette M. Shipman, | ) | Civil Action  No. 5:14-02700-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and

Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") denying his

claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned

recommends that the Commissioner's decision be affirmed.

I.  Relevant Background

A.  Procedural History

In December 2011, Plaintiff filed applications for DIB and SSI alleging a disability onset

date of July 7, 2011. Tr. 181-88. After being denied both initially and on reconsideration, Tr.

103-05, 126-29, on June 19, 2012, Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), Tr. 141-45. On March 28, 2013, the ALJ conducted a hearing, taking testimony

from Plaintiff and a vocational expert ("VE"). Tr. 34-58.[1] The ALJ issued a decision on April 16,

2013, finding Plaintiff not disabled under the Act. Tr. 21-29. After granting Plaintiff's request for

additional time, Tr. 7-8, the Appeals Council denied Plaintiff's request for review, thereby

making the ALJ's decision the Commissioner's final administrative decision for purposes of

judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the

Commissioner's decision in a Complaint filed on July 2, 2014. ECF No. 1.

### B. Plaintiff's Background

Plaintiff, born on August 22, 1976, was 34 years old as of her alleged onset date of July

7, 2011, and 36 years old when the ALJ rendered his decision. Tr. 215. Plaintiff completed four

or more years of college and her prior work history includes social worker, retail sales person,

restaurant hostess, and call center customer service person. Tr. 221. Plaintiff alleged that she

stopped working on July 7, 2011, due to her medical condition of multiple sclerosis.[2] Tr. 220.

### C. The Administrative Hearing

#### 1. Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing on March 28, 2013. *See*

Tr. 34-81. In response to questions from the ALJ Plaintiff testified that her disability began in

July 2011; at that time she was working at Red Lobster restaurant as a hostess, where she had

been employed since March 2011. Tr. 37. Plaintiff testified she resigned that part-time job

because she had to stand and she was having problems with her legs. Tr. 38. Plaintiff testified

---

[1] A second transcript of the administrative hearing is included in the record. The transcript is identical to the transcript cited above except that it does not contain additional testimony from the VE obtained after the ALJ reopened the hearing to take testimony correcting Plaintiff's work history. *See* Tr. 59-81. Because the second transcript is incomplete, the undersigned will reference only the transcript contained at Tr. 34-58.

[2] Multiple sclerosis ("MS") involves an immune-mediated process in which an abnormal response of the body's immune system is directed against the central nervous system ("CNS"), which is made up of the brain, spinal cord and optic nerves. *See* http://www.nationalmssociety.org/What-is-MS/Definition-of-MS (last visited June 23, 2015).

that she was drawing unemployment before she resigned and continued to draw unemployment until a "couple of months" before the hearing. Tr. 38. Plaintiff confirmed that she drew unemployment for almost two years and during that time she continued to look for employment. *Id.* During that time, Plaintiff had certified that she was available and able to do full-time work. Tr. 39.

Plaintiff testified that she lived with her mother, who was retired, and that she had two children ages twelve and five. Tr. 39. Plaintiff stated that she can get up and prepare breakfast. Tr. 40. She testified she takes naps during the day and "can fix some dinner for [her] kids." *Id.* Plaintiff testified that she continues to do at home some exercises that she did previously in physical therapy. *Id.* Plaintiff stated that both her children are in school and that she goes to their schools for programs or PTA meetings. *Id.* Plaintiff testified that she attends church and that she has friends with whom she goes to the movies or out to eat. Tr. 41. Plaintiff stated she was being treated currently at MUSC [Medical University of South Carolina] and was not seeing anyone else. *Id.*

In response to questions from her counsel Plaintiff testified that she was diagnosed with MS in 1998 by Dr. Aljoeson Walker when Plaintiff was in her early 20's. Tr. 41. Plaintiff stated she has been seeing Dr. Walker on a regular basis since 1988. *Id.* Plaintiff stated that MS began affecting her ability to work when she was working at the Department of Social Services ("DSS"). *Id.* Plaintiff stated that because she got sick every month she was "put on desk duty." Tr. 42. Plaintiff testified she was terminated from her job working at a call center in Greenville because she was "missing a lot of days because of [her] illness." *Id.* She then had problems working at Red Lobster standing on her feet for four hours. *Id.* Plaintiff stated her job with DSS ended in 2008 because she "needed to do something different because [she] got sick a lot on that

job." *Id.* Plaintiff testified that because she is limited in the jobs she can do, she looks for part-time jobs. *Id.* Plaintiff stated she had three employers between working for DSS and 2011. Tr. 43. Plaintiff stated she kept trying to go back to work because she "needed to work" and "didn't have any other income and [she had] two children." *Id.* Plaintiff testified that when receiving unemployment benefits she certified that she was willing to work "[b]ecause it was unemployment, and they asked the question, and I didn't want to say, No, I'm not willing and able to work. I put, I am willing and able to work." Tr. 44. Plaintiff stated she was not "receiving any disability or anything." *Id.*

Plaintiff testified that because of her health situation it is harder for her to find a job because she is limited as to what she can do. Tr. 44. Plaintiff stated that her job at the call center ended in 2010 because she was "missing a lot of days" and she probably missed once a week. Tr. 44. Plaintiff testified that she has pain in her right leg that feels like "muscle pulling in my leg." Tr. 45. Plaintiff stated she can walk for about five minutes at one time, can stand for about ten minutes before needing to sit, and can sit for about an hour or two. Tr. 45-46. Plaintiff stated that after an hour or two of sitting her legs begin to bother her and when she stands up she feels dizzy. Tr. 46. Plaintiff stated that she has trouble lifting things and her arm and right hand is sometimes numb, and she sometimes "get numb on the left side of [her] body, and it's harder for [her] to lift." *Id.* Plaintiff stated she could lift ten pounds on a one-time basis before making her conditions worse. Tr. 47. Plaintiff testified that she is "tired a lot." *Id.* She stated that after she gets up in the morning to get her children ready for school she comes back home and goes to sleep. *Id.* Then, when she wakes up again she makes herself breakfast and tries to do a "little cleaning." *Id.* She then goes back to sleep to rest before the children get home from school because she knows she will have to help them with schoolwork. *Id.* Plaintiff stated she rests for

about three hours every day. *Id.* Plaintiff testified that she takes care of the laundry and she grocery shops with her mother. Tr. 47-48. Plaintiff stated that she uses the grocery cart to hold onto for balance when walking around the store. Tr. 48. She stated a typical grocery trip lasts for about an hour. *Id.* Plaintiff testified that she drives every day to take her children to the bus stop, and she drives to church but she does not "go to church as often as [she] used to." Tr. 49. Plaintiff stated that when she is at home she is cleaning or watching television. *Id.* Plaintiff stated that she sometimes has trouble remembering things. Tr. 50.

2. VE Testimony

VE Carey Washington, Ph.D. also testified at Plaintiff's administrative hearing. Tr. 50-57. The VE described Plaintiff's past work as follows:

> [S]he's been primarily a hostess, which is light work activity, with an SVP of 6. She has also done work that would best be described as an auto rental clerk. This is considered a lighter work activity, with an SVP of 4. She's worked at a telephone call center as a sales rep. This is considered a sedentary work activity, with an SVP of 3. The record also indicates she worked as a personal assistant, and this work is lighter work, with an SVP of 3. She has also done work as a waitress/bartender; this is considered lighter work activity, with an SVP of 3. And she did some office management clerk duties, and this is also a lighter work activity, with an SVP of 3.

Tr. 51. The VE noted that Plaintiff's prior work as a social worker would be "lighter work, with an SVP of 6." *Id.*

At the end of the VE's testimony it was determined the VE had been provided the wrong vocational record and the parties went back on the record to clarify Plaintiff's vocational history. Tr. 56. The VE described Plaintiff's past work as follows:

> The work that has been noted . . . as that of a hostess, which is lighter work activity, with an SVP of 6. This individual has also done some cashier work; this is considered lighter work activity, with an SVP of 2. She's also worked for a telephone call center as a sales rep; this is considered a sedentary work activity, with an SVP of 3. And she's also been a case manager, or a social service worker, and this is considered a lighter work activity, with an SVP of 7.

Tr. 56-57. The VE eliminated the previously identified positions of personal assistant, waitress, and auto rental clerk. Tr. 57.

The ALJ asked the VE to assume a person similar to Plaintiff, a "younger person, 34 to 36 years of age, college education," with Plaintiff's past work experience. Tr. 52. The individual would be limited to sedentary work, "would further be restricted to only occasional postural activities; would be precluded from climbing ropes, or ladders, or scaffolds; would need to avoid concentrated exposure to temperature extremes, as well as all work hazards, like heights and moving machinery; and would further be restricted to only occasional overhead work." *Id.* The ALJ asked the VE if a person with those limitations be able to do Plaintiff's past work. *Id.* The VE responded that the individual could do Plaintiff's job at the call center. *Id.* The ALJ asked the VE to assume that "in addition to the restrictions outlined this person would also be limited to simple, routine, repetitive kinds of tasks." *Id.* The VE stated that restriction would preclude that work, but there would be other work that would accommodate that additional limitation. *Id.* The VE identified the following examples of other available work: addresser, sedentary, unskilled, SVP:2, DOT number 209.587-010, approximately 3,000 in South Carolina, nationally 125,000; quotation clerk, sedentary, unskilled, DOT number 237.367-046, approximately 6,000 in South Carolina, nationally 100,000; and weight tester, sedentary, unskilled, DOT number 539.485-010, in South Carolina 5,000, nationally 175,000. Tr. 53.

The ALJ asked the VE to assume that in addition to the restrictions outlined previously, the individual would need to take extra breaks—two in the morning and two in the afternoon of 15 to 20 minutes each—and what affect that would have on the available jobs. Tr. 53. The VE stated that in his opinion "it would preclude the performance of these jobs, or any other substantial gainful work activity." *Id.* The ALJ asked the VE what was the "customary tolerance

for absences in the industry?" *Id.* The VE responded "One day or more a month, if they're absent they would not be able to carry out competitive work." *Id.* After some discussion and clarification regarding the use of sick leave versus unexcused absences, the VE stated that because sick leave can be cumulative and the amount varies from one corporation to another, he did not know of an established sick-leave policy in the industry. Tr. 54-55.

II. Discussion

A. The ALJ's Findings

In his April 16, 2013, decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since July 7, 2011, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis (MS) and cervical degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except only occasional postural activities; no climbing of ladders, ropes and scaffolds; no concentrated exposure to temperature extremes and all work hazards; and only occasional overhead work.

6. The claimant is capable of performing past relevant work as a telephone call center sales representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

  7.  The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 23-28.

  B. Legal Framework

   1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*,

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *See Vitek v. Finch*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.  Analysis

Plaintiff argues that the ALJ erred by: (1) failing to apply the proper legal standard in disregarding the opinion of Plaintiff's primary treating specialist; and (2) not finding Plaintiff disabled based on the testimony of the VE. Pl.'s Br. 1, ECF No. 15.

1.  Consideration of the Opinion of Dr. Walker

Plaintiff's first allegation is that the ALJ erred by disregarding the opinion of her treating rheumatologist, Dr. Aljoeson Walker, that Plaintiff was "unable to work on a 5 day/8 hour work week schedule." Pl.'s Br. 4. Plaintiff asserts there is "no evidence from any other treating or examining physician that is inconsistent with the opinion of Dr. Walker. In fact, there is no evidence contradicting Dr. Walker's diagnoses or his assessments of the severity of her impairments, let alone 'persuasive' contradictory evidence." *Id.* at 6. Plaintiff argues that the ALJ's rejection of Dr. Walker's opinions was based on the ALJ's "own medical expertise which he does not possess." *Id.* Plaintiff asserts that the "ALJ did substitute his own judgment in this case for the diagnosis and severity of Plaintiff's multiple sclerosis." *Id.* at 7. Plaintiff also argues the ALJ erred in attributing greater weight to the opinions of the non-examining physicians who were not specialists over the opinion of Dr. Walker who is a specialist. *Id.* at 8. The Commissioner asserts, "Contrary to Plaintiff's argument, the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Walker, giving it only some weight (Tr. 27)." Def.'s Br. 10, ECF No. 17. The Commissioner contends that "Because the agency physicians' opinions were supported by the record evidence—including Plaintiff's many and varied activities of daily living, successful completion of physical therapy, and physical examinations which revealed normal strength, sensation, and gait—the ALJ properly afforded them more weight than the

opinion of Plaintiff's treating physician whose findings were not even supported by his own medical records." *Id.* at 12.

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d at 35). Under § 404.1527 and § 416.927, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

On March 6, 2013, Dr. Walker completed a two-page Medical Assessment of Ability to Perform Work-Related Activities (Physical). Tr. 410-11. The first question on the form asked if the patient was "capable of performing sustained work activity for an 8-hour work day, five days per week." Tr. 410. Dr. Walker checked the box marked "no." *Id.* Dr. Walker noted the maximum amount to lift and carry on an occasional basis was 10 pounds and the maximum amount on a frequent basis was less than 10 pounds. *Id.* He noted the maximum amount of time sitting, given normal breaks, was about two hours during an eight-hour day. He further noted Plaintiff could sit 90 minutes before having to stand or walk, stand or walk ten minutes before having to sit, and would need the opportunity to shift at will from sitting or standing/walking. *Id.* Dr. Walker noted Plaintiff would "frequently" need to lie down at unpredictable intervals during an eight-hour work day and that an "abnormal MRI" supported this limitation. *Id.* Dr. Walker found Plaintiff could infrequently bend or stoop and occasionally crouch. *Id.* Dr. Walker noted that on average he anticipated Plaintiff's impairments, treatment, or effects from treatment would cause her to be absent from work more than four days a month. Tr. 411.

In determining Plaintiff's RFC the ALJ specifically noted Plaintiff's activities of daily living ("ADLs"), including the ability to "fix breakfast, drive her children to the bus stop/school, clean her house a little every day, grocery shop, do laundry, fix dinner and watch television." Tr. 25. The ALJ noted that Plaintiff "related that she leaves her home every day to do the above activities. She stated that she also has to lie down about three hours during the day due to fatigue." *Id.* The ALJ found:

> Despite her allegations of severe functional limitations and fatigue, the evidence reveals that the claimant has reported that she retains the ability to perform a

significant range of activities of daily living. As noted previously, the claimant was able to take care of her personal needs, clean the house, do laundry, iron, and prepare meals. She was also able to drive, shop, attend church, and spend time with her family and friends. She goes to movies and out to dinner. She can handle her finances, and watch television. She takes care of her two children, drives them to the bus stop/school, fixes them breakfast and dinner, helps them with their homework and occasionally attends their school functions.

Tr. 26 (citing to exs. 5E, 6E). The ALJ concluded by stating, "Such activity is inconsistent with allegations of total disability." *Id.* The ALJ cited to Dr. Walker's treatment records from September 2011 to December 2012, which revealed that while Plaintiff "complained of weakness, difficulty walking, poor balance, in addition to left leg pain after standing long periods, examinations failed to reveal evidence of any significant functional deficits." Tr. 27. The ALJ noted that Plaintiff started physical therapy on January 10, 2013 and after nine visits "it was reported that the claimant was independent with the exercise program and that she had met all her therapy goals." *Id.* (citing Ex. 7F). The ALJ also referenced Plaintiff's August 2012 MRI revealing "degenerative disc disease with severe canal stenosis at C4-5" noting that although the record failed to reveal that Plaintiff received any specific treatment for this condition he determined it to be a severe impairment and accommodated it in his RFC. *Id.*

The ALJ considered the March 2013 Medical Source Statement of Dr. Walker that reported Plaintiff was "unable to sustain work activity for an eight-hour workday, five days a week." Tr. 27. The ALJ made the following determination:

After a review of the treatment records from Dr. Walker, I find that there is no evidence of any significant clinical findings to support these limitations offered by Dr. Walker. As noted above, examinations of the claimant by Dr. Walker are essential benign. (Exhibit 2F, 3F, 4F, 6F, 7F) Moreover, it is irrational that Dr. Walker has limited the claimant to only two hours of sitting during an eight-hour day, yet he noted that she could sit 90 minutes at one time. The two-hour sitting limitation is also contrary to the claimant's testimony that she can sit for one to two hours, then stand a minute and return to sitting. This two-hour sitting limitation is also contrary to the record that shows the claimant was independent in her physical therapy exercises and that she was able to tolerate five to fifteen

minutes of an uninterrupted exercise bout. (Exhibit 7F) Therefore, since the evidence of record does not support these limitations and the fact that the determination of whether an individual is disabled is reserved to the Commissioner pursuant to Section 20 CFR 404.1527, I accord the opinion of Dr. Walker little weight.

Tr. 28.

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro*, 270 F.3d at 176. Social Security Regulation 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. As required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to Dr. Walker's opinion. *See Mellon v. Astrue*, No. 4:08–2110–MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) ("[S]o long as the narrative opinion is sufficien[tl]y detailed and cogent on the ultimate issues for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal."). The undersigned finds that Plaintiff's allegation that the ALJ disregarded Dr. Walker's opinion that she was incapable of performing sustained work activity to be without merit. The ALJ articulated sufficient reasons for assigning less-than-controlling weight to the statement by Dr. Walker.

The ALJ also considered the opinions of the Disability Determination Service medical consultants who reviewed the record related to Plaintiff's functional limitations. Tr. 28. Plaintiff asserts that there is "nothing in the record to indicate the specialties of the reviewing state

consultants" and because Dr. Walker is a specialist the regulations require that more weight be given to his opinion. Pl.'s Br. 7. Social Security Ruling 96-6p provides that findings of fact made by State agency medical consultants regarding an individual's impairments "must be treated as expert opinion evidence of nonexamining sources" at the ALJ level of review. 1996 WL 374180, at *1. The ruling states that ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Id.*; see also *Roberts v. Astrue*, No. 1:11-CV-00236-MR, 2013 WL 663306, at *6 (W.D.N.C. Feb. 22, 2013) (finding that "regardless of the physicians' medical specialties . . . they are to be considered experts in the evaluation of medical issues in disability claims under the Act."). Ruling 96-6p also provides that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3. The Ruling cites an example of an "appropriate circumstance" as when the consultant's opinion is "based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

Here, Plaintiff asserts that because the State consultants' opinions were rendered in early 2012 and the consultants did not review Dr. Walker's records and assessments made after June 2012 or MRI reports from August and October 2012 the opinions should be given minimal weight. Pl.'s Reply 3-4, ECF No. 21. Although the consultants did not have these later medical records, the records were considered by the ALJ. Tr. 27. Accordingly, the State agency opinions should be considered as expert opinion evidence under the regulations. *Thacker v. Astrue*, Civil No. 3:11 CV246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record—because the

record was incomplete at the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.").

In his explanation of the weight given to the State agency medical consultants' opinions, the ALJ cites to Exhibits 6A and 7A. Tr. 28. The exhibits are identical and contain a section titled "Residual Functional Capacity" signed by Dr. Jim Liao dated June 4, 2012. Tr. 111-113, 121-23. The cited exertional limitations reflect an RFC for light work noting Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of four hours with normal breaks; sit for about six hours in an eight-hour day with normal breaks; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs; occasionally balance, stoop, kneel, crouch, or crawl; and she should avoid concentrated exposure to extreme cold, extreme heat, and hazards. *Id.* The ALJ gave great weight to this opinion "as it concludes that the claimant is not disabled. However, I have reduced the exertional level of work to sedentary to address the claimant's complaints of pain and fatigue." Tr. 28. Giving great weight to the opinion because it "concludes that the claimant is not disabled" is in error. Just as the ALJ discounted Dr. Walker's opinion because "the determination of whether an individual is disabled is reserved to the Commissioner," Tr. 28, the ALJ should have discounted the opinions of the medical consultant for that same reason. However, the undersigned finds that this error does not require remand as the ALJ considered Plaintiff's subjective complaints and assigned her an even more restrictive RFC than was suggested by the State agency consultant opinions. *Wood v. Colvin*, No. 9:14-CV-1684, 2015 WL 3562172, at *10 (D.S.C. June 5, 2015) (citing *Marquez v. Astrue,* No. 08–206, 2009 WL 3063106 at *4 (C.D. Cal. Sept. 21, 2006) (No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner); *cf. Muir v. Astrue,* No. 07–727, 2009 WL 799459, at *6 (M.D. Fla. Mar. 24,

2009) (No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided); *see also Thomas v. Celebreeze,* 331 F.2d 541, 543 (4th Cir. 1964) (court scrutinizes the record as a whole to determine whether the conclusions reached are rational)). The ALJ articulated sufficient reasons for assigning little weight to the statement by Dr. Walker and for the weight assigned to the State agency physicians, but no controlling weight to any offered opinions. Instead, relying on substantial evidence available in the record, including Plaintiff's testimony as well as the medical records, the ALJ concluded that Plaintiff possessed the RFC to perform sedentary work with additional limitations. Tr. 24. Accordingly, the undersigned recommends this challenge to the ALJ's decision be dismissed.

### 2.  Consideration of the VE's Testimony

Plaintiff argues that the ALJ erred in not finding Plaintiff disabled based on the testimony of the VE that a person who missed work at least one day a month a consistent basis would be unable to hold down competitive work. Pl.'s Br. 11, 13. Plaintiff asserts that the ALJ's additional questions to the VE "only established that with an accommodating employer, a person could miss up to four days per month in some types of employment but he did not address how that related to Plaintiff's [PRW] as a telephone call center sales representative. In any event, the VE testified that missing more than four days per month would preclude any employment." *Id.* at 13. The Commissioner contends "the ALJ included limitations that the record supported and excluded those that the record did not support . . . . Therefore, the ALJ did not need to include this limitation in his hypothetical question to the VE." Def.'s Br. 13.

> "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989); *see* §§ 404.1560(b)-(c) and 404.1566(e). The ALJ may pose hypotheticals to the VE that "fairly set out all of [the] claimant's impairments." *Walker,* 889 F.2d at 50; *see also Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005)

> (holding that hypotheticals must "adequately" describe the claimant's impairments). However, the hypotheticals posed by the ALJ need only reflect those impairments supported by the record. *Russell v. Barnhart,* 58 F. App'x 25, 30 (4th Cir. 2003) (unpublished) (citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987)). Furthermore, an ALJ is not required to accept the answers a VE gives to a hypothetical that contains limitations not ultimately adopted by the ALJ. *See Hammond v. Apfel,* 5 F. App'x 101, 105 (4th Cir. 2001) (unpublished).

*Smith v. Colvin*, No. 4:12-CV-03588-DCN, 2014 WL 1159056, at *3 (D.S.C. Mar. 20, 2014). "[T]he Fourth Circuit has found that an ALJ's hypothetical questions were 'entirely proper' when the ALJ asked alternative hypotheticals, with one 'incorporat[ing the claimant's] subjective complaints and one that did not.'" *Fuller v. Astrue*, No. 8:11-CV-02854-TLW, 2012 WL 7548727, at *15 (D.S.C. Dec. 18, 2012) (citing *Davis v. Apfel*, 162 F.3d 1154, 1998 WL 559728, at *2 (4th Cir. 1998) (unpublished table decision) *report and recommendation adopted*, No. CIV. A. 8:11-02854, 2013 WL 708873 (D.S.C. Feb. 25, 2013). In the *Davis* case, the "Fourth Circuit noted that '[b]y presenting a hypothetical, the ALJ was not making findings of fact,' and accordingly, the ALJ could ask contradictory hypotheticals during examination of the VE and determine later which hypothetical 'most closely fit the evidence of record.'" *Id.*

Here, the ALJ posed three hypotheticals to the VE. In the first he asked the VE to assume an individual limited to sedentary with additional postural and environmental limitations. Tr. 52. The ALJ then expanded the hypothetical to limit the individual to "simple, routine, repetitive kinds of tasks." *Id.* In his final hypothetical the ALJ asked the VE to assume, in addition to the previous restrictions, that the individual would need to take extra breaks. Tr. 53. The ALJ then questioned the VE about "customary tolerance for absences in the industry" without including the response as part of a hypothetical. Tr. 53-55. The VE testified that a person who missed one day per week, or four days a month without using an established sick-leave policy would not be able to work. Tr. 55. Neither the ALJ nor Plaintiff's counsel questioned the VE further. Tr. 56.

The ALJ's ultimate RFC assessment was based on his first hypothetical to the VE. Tr. 24. The ALJ did not include any other limitations based on simple, routine, or repetitive tasks; the need for extra breaks; or missing multiple days of work each month. "The ALJ was not required to accept the VE's answers concerning limitations not ultimately adopted by the ALJ." *Smith v. Colvin*, 2014 WL 1159056, at *4 (citing *Hammond v. Apfel*, 5 F. App'x at 105). The ALJ discussed the issue of absences from work in his decision and found:

> The claimant and her attorney have argued that the claimant would miss one to two days of work per week due to her MS and any related symptoms; however, the evidence of record just does not support this. Indeed, the claimant actually testified that she is away from her home seven days per week performing various activities as discussed in the paragraphs above. Due to the claimant's self-reported activities and her level of physical functioning . . . I find there is no basis that the claimant would miss one to two days of work per week. I note that the vocational expert testified that an employer would not likely tolerate an employee missing work one day a week or four days a month, without using sick leave. However, I find that the question to the vocational expert concerning work absences is irrelevant as it pertains to this case, for the reasons discussed in this paragraph.

Tr. 26.

Because the ALJ determined the question of absences did not fit the evidence of record, the ALJ was not bound by the answer elicited from the VE. Accordingly, the undersigned finds no error in the ALJ's treatment or use of the VE's testimony.

### III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's physical condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

June 26, 2015                                Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**