**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| JOSETTE M. SHIPMAN, ) | |
| ) | No. 5:14-cv-2700-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R") that the court affirm Commissioner of Social Security Carolyn Colvin's decision denying claimant Josette M. Shipman's ("Shipman") application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Shipman filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.   BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.   Procedural History

Shipman first filed an application for SSI on December 19, 2011 and for DIB on December 20, 2011, alleging she had been disabled since July 7, 2011. The Social Security Administration ("the Agency") denied Shipman's applications both initially and on reconsideration. Shipman requested a hearing before an administrative law judge ("ALJ"), and ALJ Thomas G. Henderson presided over a hearing held on March 28, 2013. In a decision issued on April 16, 2013, the ALJ determined that Shipman was not disabled. Shipman requested Appeals Council review of the ALJ's decision. The ALJ's

1

decision became the final decision of the Commissioner when the Appeals Council denied further review on June 2, 2014.

On July 2, 2014, Shipman filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on June 26, 2015, recommending that this court affirm the ALJ's decision. Shipman filed objections to the R&R on July 10, 2015, and the Commissioner responded to Shipman's objections on July 27, 2015. The matter is now ripe for the court's review.

### B.     Medical History

Because the parties are familiar with Shipman's medical history, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Shipman was thirty-four years old at the time of her alleged disability onset date. She completed four or more years of college and has past relevant work experience as a social worker, retail sales person, restaurant hostess, and call center customer service person. Plaintiff alleges disability due to multiple sclerosis.

### C.     ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the

claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Shipman was disabled from July 7, 2011 through the date of his decision, the ALJ employed the statutorily-required five-step sequential evaluation process. At step one, the ALJ found that Shipman did not engage in substantial gainful activity during the period at issue. Tr. 23. At step two, the ALJ found that Shipman suffered from the following severe impairments: multiple sclerosis and cervical degenerative disease. Id. At step three, the ALJ found that Shipman's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 24. Before reaching the fourth step, the ALJ determined that Shipman retained the residual functional capacity ("RFC") to perform

sedentary work, limiting her to "only occasional postural activities; no climbing of ladders, ropes, and scaffolds; no concentrated exposure to temperature extremes and all work hazards; and only occasional work." Id. The ALJ found, at step four, that Shipman was able to perform her past relevant work as a telephone call center sales representative. Tr. 28. Finally, at step five, the ALJ determined that Shipman was not disabled during the period at issue. Tr. 28–29.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.   DISCUSSION

Shipman objects to the R&R on the ground that the magistrate judge erred in finding that the ALJ properly evaluated the opinion evidence.  Pl.'s Objections 1.  Specifically, she argues that the ALJ improperly disregarded the opinion of Shipman's treating neurologist, Dr. Aljoeson Walker ("Dr. Walker"), while giving more weight to the opinions of non-examining state agency consultants.  Id.

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence.  20 C.F.R. § 404.1527(c).  Medical opinions are evaluated pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

Here, Dr. Walker opined on March 6, 2013 that Shipman was unable to work. Tr. 410. Specifically, he responded to a questionnaire that Shipman could only lift 10 pounds occasionally, stand or walk for less than two hours in an eight-hour workday, and sit about two hours in an eight-hour workday. Id. He opined that Shipman could sit for 90 minutes before having to stand or walk and could stand for ten minutes before having

6

to sit. Id. He further opined that, based on "an abnormal MRI," Shipman would frequently need to lie down at unpredictable intervals during an eight-hour workday. Id. Dr. Walker also found that Shipman could never reach, push and pull, nor use gross manipulation skills and fine manipulation skills. Tr. 411. He concluded that Shipman's impairments, treatment, or effects from treatment would cause her to miss work more than four days per month. Id.

In his decision, the ALJ afforded "little weight" to Dr. Walker's opinion, finding that Dr. Walker's treatment notes did not reveal "evidence of any significant clinical findings to support [the proffered] limitations." Tr. 28. The ALJ noted that Dr. Walker's examinations of Shipman "were essentially benign." Id. He also questioned Dr. Walker's opinion that Shipman could sit only two hours during an eight-hour workday, noting the following contradictory evidence: (1) Dr. Walker's opinion that Shipman could sit 90 minutes at one time; (2) Shipman's testimony that she could sit for one or two hours, then stand a minute and return to sitting; and (3) records indicating that Shipman "was independent in her physical therapy exercises and [] was able to tolerate five to fifteen minutes of an uninterrupted exercise bout." Id. The ALJ concluded that the evidence in the record did not support the limitations opined by Dr. Walker. Id.

The ALJ explained that he afforded "great weight" to the opinions of the Disability Determination Service ("DDS") medical consultants, Dr. Angela Saito ("Dr. Saito") and Dr. Jim Liao ("Dr. Liao").[1] Tr. 28. The ALJ found that these consultants

---

[1] Although the ALJ only cites Dr. Liao's report, he acknowledges Dr. Saito's report by recognizing that "medical consultants reviewed the medical evidence in the record pertaining to the claimant's functional limitations." Tr. 28. The two consultants made identical RFC findings. Accordingly, the court references the reports from both consultants.

7

> also reviewed the medical evidence of record pertaining to the claimant's functional limitations. They found that the claimant was limited to light work activity with no climbing of ladders, ropes and scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; and no concentrated exposure to temperature extremes and hazards. (Exhibit 6A, 7A) I give great weight to this DDS opinion as it concludes that the claimant is not disabled. However, I have reduced the exertional level of work to sedentary to address the claimant's complaints of pain and fatigue.

Id.

### A.      Dr. Walker's Opinion

#### 1.      RFC Assessment

Shipman argues that "[t]here is no substantial evidence inconsistent with Dr. Walker's opinion that [Shipman] could not engage in substantial activity in accordance with SSR 96-8p. Pl.'s Objections 9; see SSR 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996). Relatedly, she argues that the ALJ erred in finding that Shipman's activities of daily living were "inconsistent with allegations of total disability." Id. at 7–9.

Contrary to Shipman's assertions, the court finds that the ALJ's decision to discount Dr. Walker's opinion is supported by substantial evidence. When assessing Shipman's RFC, the ALJ thoroughly discussed the evidence in the record that he found to be inconsistent with Dr. Walker's opinion. Tr. 25–28. For example, Shipman testified at the ALJ hearing that she could sit "about [an] hour or two," but would have stand once her legs began to bother her. Tr. 46. However, she could then "sit back down." Id. In addition, Dr. Walker's neurological examinations consistently revealed that Shipman had "5/5" motor strength in her upper and lower extremities, her "tone and bulk" were appropriate for her age, and her gait was "narrow-based." Tr. 305, 310–311, 350, 360–

8

61. According to the ALJ, these examinations "failed to reveal evidence of any significant functional defects." Tr. 27.

Further, Shipman's physical therapy reports indicate that proper treatment improved her functional abilities. At Shipman's initial therapy session on January 10, 2013, the physical therapist observed that Shipman could ambulate with a wide base of support without a device, had a decreased gait velocity, had no spasticity in her muscle tone, experienced an intact sensation to light touch, and was at a moderate risk for falls. Tr. 389. The therapist planned to "promote a safe return to [Shipman's] previous level of function," while preventing "future impairments and functional limitations." Tr. 390. The therapist gave Shipman a "fair–good" prognosis. Id. Shipman began physical therapy with the goals to decrease pain, improve balance, and improve lower extremity function. Tr. 388–90. As noted by the ALJ, the record indicates that Shipman met all of her therapy goals after nine sessions, on February 21, 2013. Tr. 409.

The ALJ also found that Shipman's reported activities of daily living were "inconsistent with allegations of total disability." Tr. 26. Specifically, he stated that

> the evidence reveals that the claimant has reported that she retains the ability to perform a significant range of activities of daily living. As noted previously, the claimant was able to take care of her personal needs, clean the house, do laundry, iron, and prepare meals. She was also able to drive, shop, attend church, and spend time with her family and friends. She goes to movies and out to dinner. She can handle her finances, and watch television. She takes care of her two children, drives them to the bus stop/school, fixes them breakfast and dinner, helps them with their homework and occasionally attends their school functions.

Id.; see Tr. 236–39. Shipman cites Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), to argue that the ALJ drew improper conclusions from Shipman's reported daily activities. Pl.'s Objections 7–8. In Hines, the court found that the "ALJ selectively cited evidence

concerning tasks which [the claimant] was capable of performing" to determine that the claimant had the RFC to perform sedentary work. 453 F.3d at 565. The court recounted the claimant's assertions of constant pain, and that fact that he listed church "as his only social outlet or activity that he attends two or three times a month." Id. at 566. Here, there is no indication that the ALJ "selectively cited" Shipman's reported daily activities. Accordingly, the court finds that the ALJ properly considered this evidence in determining Shipman's RFC. See Mastro v. Apfel, 270 F.3d 171, 179–80 (4th Cir. 2001) (finding that "[t]he ALJ properly considered [the claimant'] reported activities," among other evidence, in concluding that the claimant's physical impairments did not limit her ability to work).

For the foregoing reasons, the court finds that the ALJ's decision to discount Dr. Walker's opinion is supported by substantial evidence in the record. As noted by the ALJ, Shipman's "self-reported activities and her level of physical functioning" do not support the opinion that Shipman would "miss one to two days of work per week due to her [multiple sclerosis] and any related symptoms." Tr. 26.

Accordingly, Shipman's first objection fails.

### 2.     Improper Practice of Medicine

Shipman, relying solely on out of circuit case law, also argues that the ALJ improperly substituted his opinion for that of Dr. Walker when reviewing Shipman's 2012 brain MRIs. Pl.'s Objections 4–6.

Shipman's August 2012 MRI indicated an "interval development of numerous new lesions, particularly involving the frontal lobe bilaterally," but there was "no evidence of acute infarction or other acute abnormalities." Tr. 342. The October 2012

MRI likewise did not reveal any "evidence of acute infarction or other acute abnormality," although it did indicate "a lesion in the midbrain on the left side" and "numerous small enhancing lesions bilaterally." Tr. 346. The ALJ mentioned these MRIs during his discussion of Dr. Walker's records, concluding that Dr. Walker's records "failed to reveal evidence of any significant functional deficits. Indeed, the claimant was consistently found to be in no acute distress and she had a narrow based gait." Tr. 28.

Courts have generally held that "where there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors." Rogers v. Colvin, No. 1:13-cv-2327, 2014 WL 5474627, at *17 (D.S.C. Oct. 28, 2014) (collecting cases). In Gallman v. Colvin, No. 5:12-cv-2979, 2014 WL 658002, at *8 (D.S.C. Feb. 19, 2014), the court found that an ALJ was not "free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render." The court noted that that the ALJ "offered little explanation" for his conclusions as to the expert's opinion and did not discuss any medical evidence that conflicted with the opinion. Gallman, 2014 WL 658002, at *8.

Here, the ALJ detailed his reasons for discounting Dr. Walker's opinion, citing the substantial contradictory evidence in the medical record. Tr. 25–28. Accordingly, the court finds that ALJ did not improperly substitute his opinion for that of Dr. Walker when determining Shipman's RFC. See Dellinger v. Colvin, No. 6:14-cv-1150, 2015 WL 5037942, at *7 (D.S.C. Aug. 26, 2015) (finding that the ALJ did not improperly substitute his opinion for that of the treating physician where the "ALJ provided

numerous reasons why he decided to give "little weight" to [the treating physician's] opinion, including the contradictory evidence in the medical record").

Accordingly, Shipman's second objection fails.

### B.     Opinions of State Agency Consultants

#### 1.     Assessment of Opinions

Shipman also contends that the ALJ improperly assessed the opinions of the state agency consultants.  Pl.'s Objections 1.  She first argues that the ALJ erred in affording great weight to the opinions of the state agency consultants "as [they] conclude[] that the claimant is not disabled."  Id. at 2.  The magistrate judge found that the ALJ's assessment was in error because "the determination of whether an individual is disabled is reserved to the Commissioner."  Powell v. Colvin, 2014 WL 67453, at *5 (D.S.C. Jan. 8, 2014); R&R 17.  However, the magistrate judge found that this error did not "require remand as the ALJ considered [Shipman's] subjective complaints and assigned her an even more restrictive RFC than was suggested by the [s]tate agency consultant opinions."  R&R 17.  Shipman disagrees, arguing that the ALJ's RFC was not more restrictive than that opined by the consultants.  Pl.'s Objections 2.

The magistrate judge relied in part on Wood v. Colvin, No. 9:14-cv-1684, 2015 WL 3562172, at *10 (D.S.C. June 5, 2015), to find the ALJ's error harmless.  R&R 17.  In Wood, the court found that the ALJ's decision was "supported by substantial evidence in the record as a whole . . . .  Indeed, it is readily apparent the ALJ gave Plaintiff every benefit of the doubt in determining his RFC by assigning him an even more restrictive RFC than was opined to by the state agency physicians."  2015 WL 3562172, at *10.  Contrary to Shipman's assertion, courts have found that when an ALJ adopts a lower

exertional level of work than that opined by a state agency consultant, the ALJ's RFC assessment is "more restrictive." Marquez v. Astrue, 2009 WL 3063106, at *4 (C.D. Cal. Sept. 21, 2009) (affirming the ALJ's observation "that his finding of light work gave Plaintiff every 'benefit of the doubt' and was even more restrictive than the exertional levels suggested by the [the state agency consultants], who both found Plaintiff capable of medium work activities"); Muir v. Astrue, 2009 WL 799459, at *6, n.9 (M.D. Fla. Mar. 24, 2009) (noting that the ALJ's finding of sedentary work was a "more restrictive RFC" than that opined by the "non-examining, state agency doctors[,]" who separately found that claimant could perform light and medium work).

Here, the ALJ detailed the evidence in the record that he found supported his RFC assessment. Tr. 27. Further, the ALJ's finding that Shipman could perform sedentary work with certain limitations was indeed more restrictive than the exertional level suggested by the state agency consultants, who both found that Shipman could perform light work. Tr. 24–28. The court therefore finds that the ALJ's assessment of the opinions of the state agency consultants in this respect does not warrant remand.

Accordingly, Shipman's third objection fails.

### 2.     SSR 96-9p

Shipman next argues that the ALJ failed to follow Social Security Ruling 96-6p by failing to point to an opinion from another specialist that contradicted Dr. Walker's opinion. Pl.'s Objections 4. SSR 96-6p provides in part that

> the opinions of [s]tate agency medical . . . consultants . . . can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other

13

>medical opinions, and any explanation for the opinion provided by the [s]tate agency medical . . . consultant . . . .

Titles II & Xvi: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, SSR 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). SSR 96-p explains that "[i]n appropriate circumstances, opinions from [s]tate agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Id. at *3. The ruling cites an example of an "appropriate circumstance" as when the consultant's "opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." Id.

Here, the evidence in the record was consistent with the state agency consultants' RFC findings. See SSR 96-6p, 1996 WL 374180, at *2. Further, the ALJ considered all of the evidence when making his RFC finding, including evidence that the state agency consultants did not review. Id.; Tr. 27. Notably, SSR 96-6p does not state that an ALJ can afford great weight to a consultant's opinion only when the consultant reviewed a medical report from a specialist in the claimant's particular impairment. Rather, this is merely listed as an example of when such a finding would be appropriate. Because substantial evidence supports the consultants' RFC findings and their findings are consistent with the record, the court finds that the ALJ complied with SSR 96-6p.

Accordingly, Shipman's fourth objection fails.

### 3. Substantial Evidence

Shipman next argues that the state agency consultants' opinions cannot constitute substantial evidence, relying on Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985). In Spencer, the court found that "reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." 765 F.2d at 1094. The court noted that the ALJ did not give any explanation for how she determined that the claimant could perform sedentary work. Id.

Here, the ALJ's RFC finding was not based exclusively upon the opinions of the state agency consultants. Along with the evidence previously discussed, the ALJ noted that "there is no evidence that the claimant has required emergency room care or hospitalization for her [multiple sclerosis]." Tr. 27. After summarizing the evidence in the record, the ALJ recognized that Shipman "has required some treatment and experienced some limitations" due to her multiple sclerosis. Id. The ALJ stated that he based Shipman's RFC on these limitations in the record. Id. Thus, Spencer is inapposite to this action because the ALJ here explained in detail how he determined Shipman's RFC and did not base his decision solely on the opinions of the state agency consultants.

Relatedly, Shipman argues that the opinions of the state agency consultants cannot be used as substantial evidence to support the ALJ's RFC assessment when Dr. Walker's opinion was submitted into evidence. Pl.'s Objections 6. Shipman relies on Boineau v. Barnhart, 378 F. Supp. 2d 690, 695 (D.S.C. 2005), to support this argument. In Boineau, the court found that the inconsistencies between the opinions of the non-treating state physicians and the treating physician were insufficient to discount the

opinion of the treating physician in favor of those opinions of the state physicians. 378 F. Supp. 2d at 695. Another court in this district has found Boineau inapposite where the ALJ's decision to discount the treating physician's opinion was supported by substantial evidence for reasons "unrelated to any opinions of the state consultants" and where the ALJ's RFC assessment was not based exclusively upon the assessments of the state consultants." Case v. Astrue, No. 806-cv-2293, 2007 WL 6872718, at *7 (D.S.C. Oct. 1, 2007) aff'd, 292 F. App'x 258 (4th Cir. 2008); see also Cromedy v. Colvin, No. 8:12-cv-02522, 2014 WL 1093101, at *20 (D.S.C. Mar. 17, 2014) (finding Boineau inapplicable to the claimant's case, noting that "[w]ith respect to the agency medical opinions, the ALJ is entitled to rely on the opinion of a non-examining physician when the opinion is consistent with the record, and when medical expert testimony conflicts, the ALJ's decision siding with the non-examining physician should stand") (citing Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)).

Here, as explained above, the ALJ offered numerous reasons for discounting Dr. Walker's opinion, unrelated to the opinions of the state agency consultants. Tr. 28. The ALJ did not base his RFC assessment exclusively on the opinions of these consultants. Tr. 26–27. Moreover, as explained above, the consultants' opinions are consistent with the record. Accordingly, the court finds that the ALJ did not err in finding that the opinions of the state agency consultants supported his RFC assessment. See Cromedy, 2014 WL 1093101, at *20; Case, 2007 WL 6872718, at *7.

Accordingly, Shipman's fifth and sixth objections fail.

### 4.  Incomplete Record

Finally, Shipman argues that the opinions of the state agency consultants cannot be afforded great weight because the consultants did not review Shipman's 2012 MRI results.  Pl.'s Objections 4.  Shipman further contends that the consultants' expectation that Shipman's condition would improve with appropriate treatment failed to materialize. Id. at 5.

Another court in this district has found that an "ALJ may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ accounts for any subsequent evidence, and substantial evidence supports the ALJ's decision." Putman v. Colvin, No. 6:13-cv-925, 2014 WL 3809492, at *15 (D.S.C. July 30, 2014); see also Dellinger v. Colvin, No. 6:14-CV-1150-DCN, 2015 WL 5037942, at *6 (D.S.C. Aug. 26, 2015) (affirming the ALJ's decision to afford the opinions of the state agency consultants greater weight, noting that "[a]lthough there are admittedly some differences in the medical records and opinions that were not reviewed by the state agency consultants, these records and opinions are largely consistent with the records and opinions that the consultants were able to review").

Here, Dr. Saito reviewed records dating through February 16, 2012, tr. 84, and Dr. Liao reviewed records dating through April 26, 2012.  Tr. 124.  The ALJ hearing was held about one year after the consultants rendered their opinions.  Tr. 21.  The court finds that the records that were not reviewed by the state agency consultants are largely consistent with the records and opinions that the consultants were able to review.  For example, Shipman's physical therapy records dating from January and February 2013 reveal that the limitations caused by Shipman's multiple sclerosis did not worsen after the

state agency consultants rendered their opinions. In fact, these records indicate Shipman's condition actually improved. The consultants considered treatment notes stating that Shipman had "relapsing multiple sclerosis," "some boor balance and [was] falling more." Tr. 85, 109. Shipman's physical therapy records indicate that Shipman began the therapy program at only a "moderate" risk of falling and had improved her balance by the end of her therapy sessions. Tr. 388–90, 409. These records support the consultants' opinion that Shipman's condition would improve with appropriate treatment.

The court further finds that the ALJ accounted for the evidence that was not available for the consultants to review and that substantial evidence supports his conclusion that Shipman is not disabled. As explained above, the ALJ detailed the evidence in the record that supported his RFC finding and specifically cited the MRIs at issue in his decision. Tr. 26–27. Accordingly, the court finds that the fact that the state agency consultants based their opinions on an incomplete record does not warrant remanding this action. See Dellinger, 2015 WL 5037942, at *6; Putman, 2014 WL 3809492, at *1.

Accordingly, Shipman's seventh objection fails.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

---
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 28, 2015**
**Charleston, South Carolina**